**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

|  |  |  |
|---|---|---|
| In re: | ) ) ) | **Chapter 7** |
| **WALLEYE TECHNOLOGIES, INC.,** | ) ) ) | **Case No. 14-12110-WCH** |
| Debtor. | ) ) |  |

**MOTION BY CHAPTER 7 TRUSTEE FOR AUTHORITY TO SELL SUBSTANTIALLY ALL ASSETS OF THE ESTATE BY PRIVATE SALE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES**

To the Honorable William C. Hillman, United States Bankruptcy Judge:

Pursuant to 11 U.S.C. §§ 105 and 363, Rule 6004 of the Federal Rule of Bankruptcy Procedure ("FRBP"), and Rule 6004 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Massachusetts ("MLBR"), Harold B. Murphy, the duly appointed Chapter 7 trustee (the "Trustee" or "Seller") of the bankruptcy estate (the "Estate") of Walleye Technologies, Inc. (the "Debtor"), respectfully moves for entry of an order (the "Sale Motion") authorizing him to sell by private sale (the "Private Sale") all of his right, title, and interest in substantially all of the assets of the Estate to CNS Therapy, Ag, or its nominee (the "Purchaser"), for a total purchase price of cash in the amount of Thirty Thousand Dollars and 00/100 ($30,000) (the "Purchase Price"). The Private Sale is not subject to any contingencies, except for Bankruptcy Court approval.

Contemporaneously with the Sale Motion, the Trustee has filed the *Motion by Trustee for Approval of Bidding Procedures In Connection with Motion By Trustee for Authority to Sell Substantially All Assets of the Estate by Private Sale, Free and Clear of Liens, Claims, Interests and Encumbrances* (the "Bidding Procedures Motion"), by which the Trustee has sought entry of

an order approving certain bidding procedures (the "Bidding Procedures"), including a termination fee provision (the "Termination Fee Provision"), a twenty percent (20%) overbid requirement for counteroffers, and an open call auction at any hearing on the Sale Motion, which procedures are contained in the Sale Motion, the Trustee's Asset Purchase Agreement with the Purchaser (the "Sale Agreement"), attached hereto as <u>Exhibit A</u>, and the proposed notice of sale (the "Notice"), attached hereto as <u>Exhibit B</u>.

The Trustee further requests authority to pay any ordinary and usual closing costs associated with the sale of the assets, if any, including, if applicable, the Termination Fee (defined below) and any costs associated with the transfer of the assets, out of the proceeds of the Private Sale, without further Order of the Court. The terms of the Private Sale are more particularly described below, and are set forth in their entirety in the Sale Agreement.[1]

### Jurisdiction

1. This Court has jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested in this motion include Sections 105(a) and 363 of the Bankruptcy Code, FRBP 6004, and MLBR 6004-1.

### Background

3. On May 6, 2014 (the "Petition Date"), the Debtor filed a voluntary Chapter 7 bankruptcy petition under 11 U.S.C. §101, *et seq.* (the "Bankruptcy Code").

4. The Trustee is the duly appointed Chapter 7 Trustee of the Estate.

---

[1] To the extent of any inconsistencies between this motion and the Sale Agreement, the provisions of the Sale Agreement shall govern.

2

5.     Prior to the Petition Date, the Debtor was in the business of developing microwave imaging technology for portable applications. The Debtor's technology was designed to allow users to see through solid objects and to display, store, analyze and transmit images in a lightweight, compact and portable camera.  Prior to the Petition Date, the Debtor had developed prototypes of the technology and was marketing its technology to government and commercial clients for use in the fields of security and construction.

**Relief Requested**

6.     Pursuant to the Sale Motion, the Trustee seeks Court authority to sell, convey, assign and deliver, subject to the conditions set forth in the Sale Agreement, his right, title and interest in and to the following assets of the Estate (the "Acquired Assets"), and not including the Excluded Assets, free and clear of all liens, claims, interests and encumbrances:

   a. all tangible personal property, including but not limited to, four imaging units and miscellaneous parts;

   b. all U.S. and foreign inventions, invention disclosure statements, patent applications, patents and registered rights and continuations thereof, confidential information, know how, trade dress, industrial designs, formulations, recipes, copyrights, mask words, websites, e-mail addresses, Internet domain names, including but not limited to www.walleye.com, the corporate name, customer lists, goodwill and other items of intangible or intellectual property, and any and all claims of the Estate arising from the infringement or misappropriation of the Debtor's intellectual property regardless of whether such rights have been exercised or claimed;

   c. all licenses, approvals and permits;

   d. all books and records of Seller (other than personally identifiable information pertaining to former employees, corporate governance documents and historical financial information), whether in hard copy or electronic format, to which Buyer shall afford Seller reasonable access after the Closing for purposes of administering the Estate;

   e. all rights of the Estate arising from the Confidentiality Agreements executed between the Trustee and various third parties; and

3

  f. all rights of the Estate in and to any causes of action or claims arising from both the business or the activities of the Debtor.

7. Estate assets that are excluded from the Private Sale (the "Excluded Assets") shall consist of all assets of the Estate not constituting Acquired Assets and shall include (i) causes of action and claims arising under Chapter 5 of the Bankruptcy Code; all causes of action and claims against insiders of the Debtor; and all claims, counterclaims, causes of action and suits against Silicon Valley Bank and its officers, directors, employees, shareholders, agents, predecessors, successors and assigns, attorneys and accountants; and (ii) any causes of action other than those specifically identified as part of the Acquired Assets.

8. The Private Sale was negotiated at arm's length between the Trustee and the Purchaser. The Trustee requests that the Court determine that the successful bidder or bidders of the Acquired Assets be deemed to be "good faith" purchaser(s) providing to the Trustee consideration for the Acquired Assets which constitutes payment of "value" pursuant to Section 363(m) of the Bankruptcy Code.

9. Pursuant to the Sale Motion, the Trustee requests authority to pay any ordinary and usual closing costs associated with the sale of the Acquired Assets, if any, out of the proceeds of the Private Sale, including, if applicable, the Termination Fee and any costs associated with the transfer of the Acquired Assets, without further Order of the Court.

10. In the event that a third party submits a counteroffer, and to the extent that the successful bidder fails to close on the sale of the Acquired Assets, the Trustee requests authority to sell the Acquired Assets to the party submitting the second highest or best offer.

**Liens Against the Assets**

11. Silicon Valley Bank ("Silicon") asserts a secured claim against all of the Debtor's assets in the amount of $273,089.00. The Trustee has asserted that Silicon's asserted secured

4

claim does not extend to certain of the Debtor's intellectual property. Silicon has contested this allegation and asserts that its lien extends to all of the Debtor's intellectual property.

12. Contemporaneously with the filing of the Sale Motion, the Trustee has filed the *Motion by Chapter 7 Trustee for Order Approving Stipulation of Settlement Pursuant to Federal Rule 9019*, and a corresponding *Stipulation of Settlement* (the "Silicon Settlement"). The Silicon Settlement provides for Silicon's consent to the proposed sale and for an agreed sharing between the Trustee and Silicon of any sale proceeds.

13. The Trustee is unaware of any other asserted liens, claims, interests, or encumbrances with respect to the Acquired Assets.

## Terms of Private Sale

14. The sale of the Acquired Assets shall be free and clear of liens, claims, encumbrances, and interests, with all such liens, claims, encumbrances and interests to attach to the proceeds of the sale of the Acquired Assets.

15. The Sale Agreement is not subject to any contingencies, except for Bankruptcy Court approval.

16. In accordance with the terms of the Sale Agreement, the Purchaser has paid the Trustee the sum of Three Thousand Dollars ($3,000) as a deposit (the "Deposit") for the purchase of the Acquired Assets.

17. Pursuant to the Sale Agreement, the Acquired Assets are to be sold in "as is" and "where is" condition. The Trustee has made no representations or warranties whatsoever, either express or implied, with respect to the Acquired Assets.

18. Concurrently with the filing of the Sale Motion, the Trustee has filed the Bidding Procedures Motion, which seeks approval of the Bidding Procedures contained herein, including,

5

among other things, (i) the Termination Fee Provision, which provides that if the Trustee sells the Acquired Assets to a party other than the Purchaser, the Purchaser shall be entitled to a termination fee in the amount of Three Thousand Dollars ($3,000) (the "Termination Fee"); (ii) a twenty percent (20%) overbid requirement for counteroffers due to the existence of the Termination Fee; and (iii) an open call auction.

## Approval of the Sale of the Acquired Assets is in the Best Interest of the Bankruptcy Estate

19. The Court should approve the Private Sale of the Acquired Assets on the terms and conditions as set forth in the Sale Agreement. The terms of the Sale Agreement are fair and reasonable, and the Trustee believes that a sale of the Acquired Assets by means of the Private Sale will yield the maximum value for the Estate.

20. The Trustee has conferred with numerous parties that have expressed an interest in the purchase of the Debtor's assets, including former officers of the Debtor, but also third parties who have businesses similar to that of the Debtor. The Trustee has arranged for interested parties to confer with former employees of the Debtor, to obtain a demonstration of the Debtor's prototypes and to inspect the Debtor's books and records.

21. Based upon the level of interest that has been expressed by third parties, the Trustee, in his business judgment, has determined that the Acquired Assets have been marketed sufficiently to maximize the value of the Acquired Assets for the Estate. Further, Silicon, who holds a security interest in the Acquired Assets, concurs that the Private Sale is the most cost-effective means to sell the Acquired Assets. The Trustee expects to receive counteroffers for the Acquired Assets; regardless, however, the Private Sale is expected to generate unencumbered funds for the benefit of the Estate.

**Counteroffers and Bidding Procedures**

22. The Private Sale of the Acquired Assets is subject to the submission of counteroffers and bidding procedures as follows:

   a. A competing bid shall be deemed to qualify as a competing bid (a "Competing Bid") only if made upon terms and provisions substantially similar to those set forth in the Sale Agreement, without contingencies except for Bankruptcy Court approval and without a Termination Fee Provision, and for a purchase price that is at least 20% higher than the Purchase Price, or $36,000.

   b. The deadline (the "Bidding Deadline") for submission of a Competing Bid shall be set by the Bankruptcy Court. Notice of the Bidding Deadline will be provided to all creditors and parties who have expressed an interest in purchasing the assets of the Debtor. A Competing Bid must contain a case caption, be accompanied by an executed asset purchase agreement substantially in the form of the Sale Agreement, and be filed, in accordance with the applicable Federal and local Rules of Bankruptcy Procedure, with the United States Bankruptcy Court for the District of Massachusetts, John W. McCormack Post Office and Court House, 5 Post Office Square, Boston, Massachusetts, 02109-3949 on or before the Bidding Deadline. The Competing Bid must also be served upon Kathleen R. Cruickshank, Esq., Murphy & King, P.C., One Beacon Street, Boston, MA 02108 (counsel to the Trustee) on or before the Bidding Deadline.

   c. Any competing bidder (the "Competing Bidder") must deliver a deposit (the "Counteroffer Deposit") in good funds to the Trustee's counsel, Kathleen R. Cruickshank, Esq., Murphy & King, P.C., One Beacon Street, Boston, MA 02108, in an amount equal to ten percent (10%) of the amount of the Competing Bid at the time of service of the Competing Bid. The Counteroffer Deposit shall be in the form of a certified check or wire transfer, and must be received on or before the Bidding Deadline. The Counteroffer Deposit delivered by a competing bidder will be forfeited in the event that such competing bidder is the successful bidder and fails to close on the sale through no fault of Seller.

   d. Any party who wishes to view equipment or available information with respect to the Acquired Assets must execute a confidentiality agreement with Seller. All confidentiality agreements between the Seller and any third parties shall be assigned to the buyer of the Acquired Assets, and will be included as "Acquired Assets" under the Sale Agreement.

   e. An auction for the Acquired Assets shall be held by the Bankruptcy Court only if there is a Competing Bid. If there is no Competing Bid, then the Trustee shall seek approval of the sale to the Purchaser.

7

    f. Only persons that have submitted a timely qualified Competing Bid and the Purchaser may participate in any auction for the Acquired Assets. All Competing Bids shall be available to the Purchaser for inspection and counterbid.

    g. Bidding at any auction for the Acquired Assets shall be conducted by open call, subject to approval of the Bankruptcy Court. The Purchaser shall be entitled to improve its offer at any auction for the Acquired Assets.

    h. In order to participate at a hearing on the sale of the Acquired Assets, the party or parties submitting the Competing Bid shall: (a) comply with all relevant bid procedures; and (b) be prepared to demonstrate to the Trustee its ability to consummate the purchase of the Acquired Assets and fulfill its obligations.

    i. At any auction on the sale of the Acquired Assets, Seller will take the Termination Fee into account when considering which offer constitutes the highest and best offer.

    j. To the extent that the successful bidder fails to close on the sale of the Acquired Assets, the Trustee may sell the Acquired Assets to the party submitting the second highest or best offer.

    k. If a bid submitted by a Competing Bidder is approved by the Bankruptcy Court, the Counteroffer Deposit shall be applied towards the Purchase Price, or if the Competing Bidder is not the successful bidder, the Counteroffer Deposit shall be refunded in full to the Competing Bidder following the closing with the successful bidder unless the Competing Bidder has breached or violated the terms of the Sale Agreement, the Sale Motion or the Bankruptcy Court order approving the sale.

    l. At the hearing on the Sale Motion, the Bankruptcy Court may 1) consider any requests to strike a higher offer; 2) determine further terms and conditions of the sale; 3) determine the requirements for further competitive bidding; and 4) require one or more rounds of sealed bids or open bids from the original offeror and any other qualifying bidder.

    m. The Bankruptcy Court may take evidence at any hearing on approval of the sale to resolve issues of fact.

## **Waiver of Provisions of Fed. R. Bankr. P. 6004(a)**

23. The Trustee requests that the Court waive the automatic stay provisions of Fed. R. Bankr. P. 6004(h) with respect to the Private Sale.

**Notice**

24. The Trustee has filed a form of proposed Notice, attached as Exhibit B, providing for the terms of sale, sale procedures, and other relevant information. The Trustee believes that the Notice provides necessary information respecting the sale and the means for obtaining additional information.

25. Upon receiving a hearing date and a deadline for objections and counteroffers from the Court, the Trustee will serve a copy of the completed Notice on all creditors and parties-in-interest, including all parties that have previously expressed an interest in purchasing the Acquired Assets and parties the Trustee believes may have an interest in purchasing the Acquired Assets.

26. Additional information respecting the terms of the sale, including objection and counteroffer procedures, is disclosed in the proposed Notice.

**WHEREFORE,** the Trustee respectfully requests that the Court enter an Order:

(A) Pursuant to 11 U.S.C. § 363, authorizing the Trustee to sell the Estate's interest in the Acquired Assets to the Purchaser, or to the highest bidder as selected by the Trustee and approved by the Court, subject to the terms and conditions substantially as set forth in the Sale Agreement, free and clear of liens, claims, encumbrances and interest, upon entry of a final, nonappealable order approving this motion provided that the parties may elect to close in the absence of a final order if no stay pending appeal is in effect;

(B) Approving the form of the proposed Notice;

(C) Approving the sale of the Acquired Assets to the next highest bidder, if the sale is not completed by the highest bidder;

(D)     Determining the high bidder to be a good faith purchaser(s) for value pursuant to Section 363(m) of the Bankruptcy Code;

(E)     Waiving the automatic stay provisions of Fed. R. Bankr. P. 6004(h) with respect to the Private Sale; and

(F)     Granting such other and further relief as the Court deems just and proper.

> HAROLD B. MURPHY
> CHAPTER 7 TRUSTEE OF
> WALLEYE TECHNOLOGIES, INC.,
> By his counsel,
>
> */s/ Kathleen R. Cruickshank*
> Kathleen R. Cruickshank (BBO# 550675)
> Murphy & King
> Professional Corporation
> One Beacon Street
> Boston, MA 02108
> (617) 423-0400
> Email:  kcruickshank@murphyking.com

DATED:  May 27, 2015
687490